UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

AIRRY DAVID MASSEY,

        Plaintiff,

v.                                                                   Case No. 20-CV-031

DAVID ALLEN,

        Defendant.

---

## DECISION AND ORDER ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

---

      Plaintiff Airry David Massey, a prisoner who is representing himself, brings this lawsuit under 42 U.S.C. § 1983 (Docket # 1.) Massey alleges that the defendant, David Allen, retaliated against him after he filed an Inmate Complaint Review System (ICRS) complaint about missing property. Before me is Allen's motion for summary judgment. (Docket # 51.) For the reasons explained below, I will grant summary judgment in Allen's favor.

### FACTS

    *1. Preliminary Matters*

      In his reply brief, Allen states that Massey failed to respond to his proposed findings of fact, so pursuant to Federal Rule of Procedure 56 and Civil Local Rule 56, the court should construe Allen's proposed findings of fact as uncontroverted. (Docket # 67 at 2.) However, district courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance with procedural rules by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005

(7th Cir. 2016). While Massey's response does not formally conform with the rules, he offers a declaration that refutes many of Allen's proposed findings of fact. As such, I will consider the information contained in Massey's submissions where appropriate in deciding Allen's motion.

   2. *Massey's Version of Events*

Massey was an inmate at Oshkosh Correctional Institution during the time when the relevant events took place. (Docket # 62, ¶ 3.) On August 17, 2016, Massey and his cellmate Robert Schumacher got in a fight after Massey complained to Schumacher about the smell inside their cell. (*Id.*, ¶ 6.) As a result, both Massey and Schumacher were sent to the Restrictive Housing Unit (RHU) for 26 days and issued conduct reports. (*Id.*) When Massey was released from RHU on September 12, 2016, he arrived at his new cell in V-Building, which had five bins containing the personal property that was removed from his cell after he was sent to RHU. (*Id.*, ¶ 7.) Massey asserts that the defendant, David Allen, who was a sergeant assigned to the third shift in V-building, was responsible for packing up his personal items when he was sent to RHU. (*Id.*, Docket # 53, ¶ 3.) Massey began unpacking his belongings and noticed that he was missing his hat, his gloves, and a rug that was a gift from his mother. (Docket # 63, ¶ 9.) Massey complained to Sergeant Lebron, not a defendant, about his missing property, and Lebron told him to speak to Allen when he was on shift on that night. (*Id.*, ¶¶ 11, 13.)

Massey approached Allen that night and asked him about his missing rug. (*Id.*, ¶ 14.) According to Massey, Allen responded that he was not allowed to have two rugs, and Massey explained that he did not have two rugs, one of them belonged to Schumacher. (*Id.*) When Massey continued to press Allen about his rug, he states Allen told him to file an

2

inmate complaint. (*Id.*) Massey also states that he asked about his missing legal materials, which Massey suspected were taken by another inmate, Jerry Meeks, who occupied his cell after he moved to RHU, and Allen had no answer. (Docket # 61 at 5; Docket # 62, ¶ 11.) Massey further states that Allen watched him walk over to the inmate complaint box and grab several Inmate Complaint Forms. (Docket # 62, ¶ 16.) Allen also watched as Massey sat in the V-Building dayroom filling out the Inmate Complaint Forms. (*Id.*)

From September 12, 2016 until his transfer to the Wisconsin Resource Center on March 28, 2017, Massey asserts Allen began retaliating against him. Specifically, Massey states Allen began a "campaign to out me to gangs;" a "campaign to discard and open my mail and read my mail;" and a "campaign to scare me at night by playing prison riot material at the highest volume through the V-Building staff computer speakers." (*Id.*, ¶ 21.)

Massey does not explain how Allen tampered with his mail. As for outing him to gangs, he states that when he first transferred to OSCI, he had a conversation with Allen on June 20, 2016 about Massey's "past protective custody history and missing shower shoes." (*Id.*, ¶ 4.) After Massey filed his inmate complaint concerning the missing property, he states that he overheard Allen telling "the A.M. cooks housed in the V-Building and the unit aids who would assist the elderly who were housed in the V-Building that the plaintiff was a snitch." (Docket # 61 at 8.) According to Massey, "I could literally hear the defendant telling those inmates that the plaintiff was a security threat to OSCI staff and should be in protective custody to protect the OSCI staff." (*Id.*) Massey reported this conversation in an Inmate Complaint Appeal dated November 23, 2016. (Docket # 61-2 at 72.)

Regarding Allen's campaign to use loud and disturbing noise to harass Massey at night, Massey asserts that for the period from the time he submitted his inmate complaint to

3

the time he was sent to the Wisconsin Resource Center in March 2017, Allen would "play vile, disturbing sounds, glass breaking, gun shots, screaming and haunting noises to frighten me, starring [sic] at my cell window a lot while his feet were on the desk. All because I continued to complain about my missing property." (Docket # 61 at 5.) Massey also states that Sergeant Doll, not a defendant, told him that Allen would watch videos of prison riots and prison riot prevention procedures. (Docket # 61, ¶ 23.) According to Massey, his cell was the closest cell to the staff desk where Allen would sit and use the staff computer. (Docket # 62, Plaintiff's Disp. Facts, ¶ 13.) Massey also states that Allen used a device called "The Pipe," which was used to ensure an accurate head count of inmates, to harass Massey by dragging it and banging it on the wall outside Massey's cell. (*Id.*, ¶ 17.)

    3. *Allen's Version of Events*

Allen does not dispute that Massey got in a fight with his cellmate and was sent to RHU. (Docket # 68, ¶ 7.) However, Allen states that he did not pack up Massey's things on the night he got sent to RHU. (Docket # 53, ¶ 10.) Massey's personal items had been packed up by the second shift staff, who put it at the officer's station. (*Id.*) Other third-shift officers who were under Allen's supervision inventoried Massey's personal property. (*Id.*, ¶ 12.) Allen "oversaw this process and signed the TLU Property Delivered to Inmate Form," but he never handled any of Massey's personal property. (*Id.*, ¶ 13.) Allen does admit that he did tell Massey to write an inmate complaint about his missing property. (*Id.*, ¶ 16.)

Allen initially asserted that he did not know about Massey's inmate complaint. (*Id.*) Massey in his response materials, asserted that because Allen was interviewed by the Complaint Examiner on February 15, 2017, about Massey's inmate complaint concerning his missing property, he knew. (Docket # 62, ¶¶ 15, 20.) Allen then clarified in his reply that

4

he understood Massey to be referring to the inmate complaint alleged in Massey's complaint concerning his missing legal materials, not the inmate complaint about his missing rug, hat, and mittens. (Docket # 67 at 2, Docket # 68, ¶ 23.) Allen maintains he did not learn of the inmate complaint concerning Massey's legal materials until Massey filed this lawsuit in the autumn of 2019. (Docket # 53, ¶ 16.) Allen does not dispute that he was interviewed for the inmate complaint concerning the rug, hat, and mittens on February 15, 2017 and became aware of it at that time. (Docket # 68, ¶ 23.) Allen points out that Massey complains about retaliatory actions from September 2016 through March 2017, so there is only approximately a one month overlap. (Docket # 67 at 3.) In response, Massey states that Allen started his campaign for retaliation in August 2016 after Allen had a conversation with another inmate who is friendly with Schumacher, William Wright, where Wright convinced Allen that Massey bullies Schumacher. (Docket # 62, ¶ 20.)

Allen states that he does not know what happened to Massey's legal work and he never handled it. (Docket # 53, ¶ 17.) He also states that while he is responsible for the mail, officers under his supervision actually sort and handle the mail, and he never had contact with Massey's mail or instructed others to tamper with it. (*Id.*, ¶ 28.) He further states that he does not know anything about Massey's affiliation with gangs or what gangs would be Massey's enemies, and he never told anyone about Massey's protective custody history. (*Id.*, ¶¶ 18-20). Allen also denies that he had a conversation about Massey's protective custody history. (*Id.*, ¶ 20; Docket # 68, ¶ 19.)

Initially, there was confusion as to whether Massey alleged in his complaint that Allen used the V-Building's PA system to harass him with noises in the middle of the night. (Docket # 68, ¶ 15.) Massey states that he never alleged that Allen used the PA system and

5

instead used the staff computer to harass him with noise. (*Id.*) Allen does not dispute for the purposes of summary judgment that Massey meant to allege the staff computer sound system. (*Id.*) He does dispute that he purposely played loud or disturbing sounds to harass Massey and posits that the sounds Massey heard came from the dayroom TV which was 15-20 feet from Massey's cell. (*Id.*, ¶ 16.) Allen states that the staff desk that had the computer was approximately 30 feet from Massey's cell, and if his door was closed, it was unlikely that Massey could have heard the noise from the staff computer. (*Id.*) Allen also disputes that he used "The Pipe" to harass Massey. (*Id.*, ¶ 17)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial.

6

*See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Massey asserts that Allen violated his First Amendment rights when he retaliated against him for filing grievances about his missing property. The "First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "To make out a prima facie case on summary judgment, the plaintiff[] must show that (1) they engaged in activity protected by the First Amendment; (2) they suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision." *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012).

Allen, for the purposes of summary judgment, concedes that Massey can meet the first two elements. (Docket # 52 at 4.) The question then becomes whether Massey establishes that the filing of his grievances was a motivating factor of Allen's actions. Massey alleges Allen's retaliatory actions fall into three categories: 1) tampering with Massey's mail; 2) telling other inmates about his protective custody status and that he is a snitch; and 3) harassing Massey with loud noise early in the morning. (Docket # 62, ¶ 21.) Allen states that he never handled Massey's mail or otherwise directed anyone to tamper with his mail. (Docket # 53, ¶ 28.) Massey asserts only that Allen tampered with his legal

7

mail and offers no other evidence explaining when, where, or how Allen tampered with his mail. (Docket # 53, ¶ 28.) Bald assertions that are not bolstered by more specific evidence are insufficient to create a genuine issue of material fact. *Drake v. Minn Mining & Mfg Co.*, 134 F.3d 878, 887 (7th Cir. 1998). Thus, Massey fails to establish that Allen ever tampered with his mail, let alone in retaliation for filing grievances.

For the other two categories, there is a dispute as to whether Allen ever told anyone about Massey's protective custody status; whether he played loud and disturbing noises on the staff computer; and whether he used "The Pipe" to make loud noises outside of Massey's cell. However, these disputes do not create material issues of fact because, when taking the facts in a light most favorable to Massey, Massey still fails to establish a causal connection between filing his grievances and Allen's actions.

First, many of Allen's alleged actions took place prior to when Allen undisputedly knew about Massey's grievance. Massey alleges that Allen retaliated against him from the time he filed his inmate complaint in the middle of September 2016 to the time he transferred to the Wisconsin Resource Center on March 28, 2017. (Docket # 62, ¶ 21.) However, Allen initially asserted in his brief supporting his summary judgment motion that he was unaware of Massey's grievance until he filed his lawsuit in the Fall of 2019, thinking that Massey was referring to the grievance he alleged in his complaint concerning his missing legal papers. (Docket # 53, ¶ 16.) Massey, in his response to Allen's summary judgment motion, countered with evidence that Allen was interviewed on February 15, 2017 as part of the investigation concerning his grievance about his rug. (Docket # 62, ¶¶ 15, 20.) However, in his response, Massey did not present evidence that Allen knew about his grievance concerning the legal papers prior to the filing of this suit. In his reply, Allen

8

admitted that he was interviewed for the investigation related to the grievance about Massey's rug on February 15, 2017. (Docket # 53, ¶ 16.) Based on the record, then, it is undisputed that Allen did not know about the grievance concerning the legal papers until the lawsuit was filed, but he did learn of the grievance about the rug on February 15, 2017. Thus, any actions that took place before February 15, 2017 could not be construed as retaliatory acts because the record shows that Allen did not know about any grievance prior to February 15. *See Howard v. Terry*, 527 F. App'x. 507, 510 (7th Cir. 2013) (affirming dismissal of several defendants on a retaliation claim because they did not know about the plaintiff's grievance). Accordingly, Allen's alleged "outing" of Massey as a snitch or discussing Massey's protective custody status with other inmates cannot be retaliatory because Massey's evidence proving these conversations occurred are from an Inmate Complaint Appeal dated November 23, 2016. (Docket # 61-2 at 72.) As such, no reasonable factfinder could conclude that Massey's grievances motivated Allen's alleged "outing" of Massey as a snitch.

Turning to Allen's alleged actions between February 15, 2017 and March 28, 2017, the facts, when taken in a light most favorable to Massey do not demonstrate they rise to the level of retaliation. Regarding Allen's alleged harassment by creating loud and disturbing noises with the staff computer and "The Pipe," Massey fails to establish that the filing of his grievance had a causal connection to Allen's use of the computer and "The Pipe" to make noise. First, according to Massey's own evidence, Allen was engaging in these activities well before he learned about Massey's grievance on February 15, 2017. (Docket # 61-1 at 38, 84-86.) Second, Massey offers up another reason for Allen's behavior that is not related to Massey's protected First Amendment action—that Allen wanted to harass Massey because

9

inmate William Wright told Allen that Massey bullies his cellmate. While, if true, that is certainly an inappropriate motivation, it doesn't rise to the level of a constitutional violation—at least not within the confines of this case. Third, many of Massey's allegations related to Allen's alleged retaliation using disturbing noise is based solely on his belief that Allen was retaliating against him. Belief or speculation as to a defendant's motive is insufficient to demonstrate a causal connection between a plaintiff's protected activity and a defendant's action. *See Devbrow v. Gallegos*, 735 F.3d 584, 587-88 (7th Cir. 2013) (citing *Springer v. Durfinger*, 518 F.3d 479, 484 (7th Cir. 2008). Because Massey fails to establish that his inmate complaints were a motivating factor for Allen's alleged actions, I grant summary judgment in Allen's favor. Massey's case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Allen's motion for summary judgment (Docket # 51) is **GRANTED.**

**IT IS FURTHER ORDERED IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under

Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case

Dated at Milwaukee, Wisconsin this 8th day of December, 2020.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge